Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel Especial

| | | |
|---|---|---|
| YAMAIDA BATISTA CINTRÓN<br>Recurrida<br><br>v.<br><br>JAIME J. SANTIAGO ROMÁN<br>Recurrente | TA2025CE00021 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Civil Núm.<br>D AL2014-0343<br><br>Sobre:<br>Alimentos (Imputación de Capacidad Económica) |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Adames Soto, Juez Ponente

## **RESOLUCIÓN**

En San Juan, Puerto Rico, a 29 de septiembre de 2025.

Comparece el Sr. Jaime Santiago Román (señor Santiago Román o parte peticionaria) mediante recurso de *certiorari* solicitando que revoquemos dos *Órdenes* y una *Resolución de Alimentos* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI) en favor de la menor MYSB. Particularmente, recurre de los siguientes dictámenes: la *Orden* emitida el 29 de abril de 2025, notificada el 30 de abril de 2025, mediante la cual el TPI le imputó capacidad económica a la parte peticionaria; la *Orden* emitida el 22 de mayo de 2025, notificada el 23 de mayo de 2025, en la cual el foro de instancia denegó la *Moción Urgente en Solicitud de Reconsideración de Imputación de Capacidad Económica y en Solicitud de Determinaciones de Hecho y Conclusiones de Hecho y Conclusiones de Derecho*, y la *Resolución de Alimentos*, emitida el 21 de mayo de 2025 y notificada el 23 de mayo de 2025, acogiendo e

impartiendo su aprobación al *Informe* rendido por la Examinadora de Pensiones Alimentarias (EPA).

Considerados los planteamientos alzados por la parte peticionaria, expedimos el recurso de *certiorari* y revocamos las resoluciones recurridas.

## I. Resumen del tracto procesal

El 17 de septiembre de 2024, la señora Yamaida Batista Cintrón presentó una *Moción de Revisión de Pensión Alimentaria* por haber transcurrido los tres (3) años reglamentarios desde que la pensión alimentaria fue establecida. El 24 de septiembre de 2024 el TPI refirió el caso a la Examinadora de Pensiones Alimentarias (EPA). El 26 de septiembre de 2024 la Oficial Examinadora emitió una *Orden* señalando vista de alimentos para el 5 de diciembre de 2024.

La vista fue celebrada en la fecha antes mencionada. Consecuentemente, la examinadora emitió el *Informe* del cual surge que, a la fecha de la vista, la señora Batista Cintrón no había presentado su Planilla de Información Personal y Económica (PIPE), ni evidencia de ingresos, por lo que se le concedió un término de cinco (5) días para hacerlo. De otra parte, el señor Santiago Román presentó su PIPE con evidencia de ingresos el 5 de diciembre de 2024. Sin embargo, este presentó el formulario de la PIPE provisto por ASUME, por lo que se le concedió un término para presentar el formulario de OAT-435.

Además, la determinación de hecho núm. 3. del *Informe* disponía que, según los talonarios presentados por el señor Santiago Román, su ingreso neto mensual ascendía a $1,607.96. Más adelante, la determinación de hecho núm. 9 fijó, conforme a las *Guías Mandatorias para Fijar y Modificar Pensiones Alimentarias den Puerto Rico,* Reglamento Núm. 9535 de 15 de febrero de 2024, una pensión alimentaria provisional de $471.50 a ser pagada mensualmente por el señor Santiago Román, en beneficio de la menor MYSB.

Se determinó, además, que el señor Santiago Román aportaría el 42% y la señora Batista Cintrón aportaría el 58% de los gastos médicos no cubiertos por el plan, los escolares, así como los extraordinarios. La vista final de alimentos quedó señalada para el 3 de febrero de 2025.

El 9 de diciembre de 2024, el señor Santiago Román presentó un escrito intitulado *Al Expediente Judicial: Envío de PIPE e Interrrogatorios* mediante el cual informó que le había enviado a la parte recurrida copia de la PIPE juramentada con los talonarios y copia del Primer Pliego de Interrogatorios y Producción de Documentos.

Cabe resaltar que, el 16 de diciembre de 2024, el foro de instancia emitió una *Resolución Provisional de Alimentos* en la cual adoptó la pensión provisional recomendada de $471.50 y las proporciones de los gastos antes mencionadas.

De otra parte, el 20 de diciembre de 2024, la señora Batista Cintrón le remitió a la parte peticionaria un *Requerimiento de Producción de Documentos*. El 29 de enero de 2025 la parte peticionaria le remitió una *Contestación al Requerimiento de Producción de Documentos*.

También el 29 de enero de 2025, la parte recurrida le informó al foro de instancia que le había enviado a la parte peticionaria su PIPE, talonarios, planilla de 2023, estado de cuenta hipotecaria, Formulario de Datos Personales de ASUME y la contestación a interrogatorio y requerimiento de producción de documentos.

El 3 de febrero de 2025, la parte recurrida presentó una *Moción Sometiendo Documento para Ser Referido a EPA* con el cual acompañó una copia de un cheque emitido el 6 de diciembre de 2023 por la cantidad de $59,353.44 por concepto de liquidación de herencia. Respecto a este, adujo que era uno de dos cheques expedidos por la misma cantidad, y pagaderos a Rey J. y Jaime J. Santiago Román. También, presentó una *Moción para que se Orden[e] Descubrir lo Solicitado* donde esgrimió que la PIPE radicada el 9 de diciembre de 2024 por el señor Santiago Román

omitió contestar la información solicitada, pues, de los 13 ítems, objetó 12; el único documento que acompañó fue la Escritura de Capitulaciones Matrimoniales. Por lo cual, solicitó la intervención del TPI para que dirimiera la controversia sobre el alcance del descubrimiento de prueba.

El 3 de febrero de 2025, la EPA emitió el *Acta de la Examinadora de Pensiones Alimentarias* de la vista celebrada en igual fecha. En esta, la EPA puntualizó que, conforme al derecho aplicable en los casos de alimentos, el descubrimiento de prueba era compulsorio, amplio y liberal. Añadió que, los estados de cuentas bancarias de los últimos treinta y seis (36) meses, así como las planillas de contribución sobre ingresos, eran documentos usuales que se solicitaban como parte del descubrimiento de prueba en casos de alimentos. La vista final de alimentos quedó señalada para el 20 de marzo de 2025.

El 6 de febrero de 2025 el TPI refirió a la EPA la *Moción Sometiendo Documento para Ser Referido a EPA* y la *Moción para que se Orden[e] Descubrir lo Solicitado.*

El 12 de marzo de 2025, el señor Santiago Román presentó una *Moción en Oposición a la Solicitud de Descubrimiento y Solicitud de Orden Protectora.* En esta, le solicitó al foro primario que declarara Sin Lugar la *Moción para que se Ordene Descubrir lo Solicitado* y declarara cumplido el descubrimiento de prueba que le fue cursado por la parte recurrida. Asimismo, solicitó una orden protectora para que la señora Batista Cintrón desistiera de solicitar información que excediera lo necesario para calcular la pensión. A su vez, peticionó que instruyera a la EPA, a tenor con *Fonseca Zayas v. Rodríguez Meléndez,* 180 DPR 623 (2011), a no computar como ingreso la herencia recibida para el cálculo de la pensión alimentaria.

El 20 de marzo de 2025, se celebró la vista sobre fijación de pensión alimentaria calendarizada inicialmente como final. No obstante, la vista final quedó señalada para el 13 de mayo de 2025.

El 31 de marzo de 2025 la parte recurrida presentó una *Moción en Cumplimiento de Orden y en Solicitud de Orden* en la cual esgrimió que, en el escrito del 12 de marzo de 2025, el señor Santiago Román reiteró su negativa a proveer la información requerida. Adujo, a su vez, que ello dilató el proceso, pues tornó imposible celebrar la vista del 20 de marzo ante la EPA. Además, sostuvo que su negativa no tenía base en derecho. Por lo cual, arguyó que la posición de la parte peticionaria solo le dejaba la opción al tribunal de imputarle capacidad económica pues, en los casos en que el padre no custodio asume capacidad económica no se le requiere su información financiera.

Atendida la moción antes mencionada, el 1 de abril de 2025, el foro primario refirió el caso a la EPA.

El 4 de abril de 2025, la EPA emitió el *Acta* donde expresó que la documentación solicitada en el descubrimiento de prueba cursado por la señora Batista Cintrón al señor Santiago Román **no solo era pertinente, sino compulsoria**.[1] Por consiguiente, recomendó que el tribunal le ordenase a la parte peticionaria que contestara el descubrimiento de prueba cursado u ordenara que el padre alimentante asumiera capacidad económica para sufragar los gastos de la menor.

El 7 de abril de 2025, la parte peticionaria presentó una *Moción en Oposición a Solicitud de Imputación de Capacidad Económica y en Reiteración de Orden Protectora*. En esta, adujo que la petición carecía de base fáctica y jurídica suficiente, pues ha cumplido con sus deberes procesales y había provisto la información relevante y proporcional, incluyendo el talonario de nómina. A su vez, arguyó que no tenía ingresos adicionales o estilo de vida lujoso, por lo que requerir más documentación

---

[1] De la pág. 161 del apéndice del recurso, *Acta de la Examinadora de Pensiones Alimentarias*, surge que la Oficial Examinadora manifestó que no se pudo atender la vista final del 20 de marzo de 2025, toda vez que **las contestaciones al requeriento de producción de documentos cursado por la señora Batista Cintrón aún no se habían contestado y no se había entregado la documentación requerida.**

solo aumentaba innecesariamente los costos del proceso y le imponía una carga irrazonable.

El 9 de abril de 2025, el TPI emitió una *Orden* mediante la cual declaró No Ha Lugar la solicitud de orden protectora del señor Santiago Román. También, el foro de instancia **le concedió un término a la parte peticionaria para que remitiera las contestaciones y documentos del descubrimiento de prueba que le fue cursado, so pena de que se le imputara capacidad económica.**

El 20 de abril la parte recurrida presentó una moción ante el TPI para informarle que el término que le había concedido a la parte peticionaria había vencido sin que este hubiese remitido lo solicitado.

El 29 de abril de 2025 el TPI ordenó la continuación de los procedimientos dando por imputada la capacidad económica del señor Santiago Román.

El 30 de abril de 2025, la parte peticionaria compareció mediante *Solicitud de Aclaración y en cumplimiento de Orden* donde esgrimió que la *Orden* del 9 de abril de 2025 fue desatendida por inadvertencia, e informó que había recopilado y producido las Planillas de Contribución sobre Ingresos correspondientes a los años 2022-2024. Asimismo, el señor Santiago Román informó que había recibido fondos por concepto de herencia, pero que no debían ser considerados como ingresos computables porque fueron destinados íntegramente al pago de deudas personales y mantenimiento de la residencia de su cónyuge.

El 7 de mayo de 2025, la señora Batista Cintrón presentó una *Moción en Cumplimiento de Orden* donde le solicitó al foro primario que se sostuviera en su determinación del 29 de abril de 2025. En concreto, adujo que habían transcurrido ocho (8) meses sin poder concluir la revisión de la pensión alimentaria en beneficio de la menor **por la obstinada renuencia de la parte peticionaria a producir información básica que, de ordinario, se requiere para los procesos de fijación y**

**revisión de pensiones alimentarias.** También, esgrimió que, en las Planillas de Contribución sobre Ingresos recibidas, **aparecía tachada la información que la parte peticionara eligió no brindar**, incluyendo el número de seguro social, **por lo que el descubrimiento de prueba no se había completado.**

El 9 de mayo de 2025, el TPI emitió una *Orden* mediante la cual se sostuvo en su determinación del 29 de abril de 2025.

El 13 de mayo de 2025 fue celebrada la vista final sobre fijación de pensión alimentaria. Del *Informe de la Examinadora de Pensiones Alimentarias* resultante se desprende que, durante la vista, surgió una controversia sobre la imputación de capacidad económica. En respuesta, la EPA puntualizó que la *Orden* del TPI era clara en establecer que la pensión alimentaria sería en base a la capacidad económica imputada. Añadió la EPA que, de la única manera que pudiera estar habilitada para variar esa *Orden* era si las partes alcanzaban una estipulación sobre la cuantía de la pensión.

También, del referido *Informe* surge que la EPA recomendó que se fijara la cantidad de $769.99 mensuales como la pensión alimentaria final, que el señor Santiago Román cubriera el 100% de los gastos médicos no cubiertos por el plan médico, y la totalidad de los gastos extraordinarios requeridos. Además, se recomendó que se concedieran los honorarios de abogados por las cuatro (4) vistas celebradas en el proceso de revisión de la pensión.

El 15 de mayo de 2025, la parte peticionaria presentó una *Moción Urgente en Solicitud de Reconsideración de Imputación de Capacidad Económica y en Solicitud de Determinaciones de Hecho y Conclusiones de Derecho*, solicitando la reconsideración de la *Resolución* del 29 de abril de 2025. Adujo, en suma, que, al no celebrarse una vista antes de imputarle capacidad económica como sanción por el alegado incumplimiento de la *Orden* para producir documentos, se le infringió el debido proceso de ley.

El 21 de mayo de 2025, el TPI declaró No Ha Lugar la petición de reconsideración. En esa misma fecha, el foro de instancia emitió una *Resolución de Alimentos*, mediante la cual fijó la pensión alimentaria final a ser prestada por la parte peticionaria en $769.99 mensuales, los gastos médicos no cubiertos por el plan médico y los gastos extraordinarios necesarios y/o requeridos. A su vez, el TPI impuso la cantidad de $1,200 por concepto de honorarios de abogado a favor de la señora Batista Cintrón.

Inconforme, el 24 de junio de 2025, el señor Santiago Román presentó el recurso de *certiorari* que nos ocupa, en el cual formuló los siguientes errores:

> Erró el Tribunal de Primera Instancia al imputar capacidad económica al recurrente, Jaime Santiago Román, sobre todos los gastos y necesidades de su hija menor MYSB.

> Erró el Tribunal de Primera Instancia al no detallar en su Orden cuales documentos debía el demandado, aquí recurrente, Jaime Santiago Román, producir a la demandante para que se tuviera el descubrimiento de prueba como completamente contestado.

> Erró el Tribunal de Primera Instancia al no considerar suficiente para que la examinadora de pensiones alimenticias pudiese calcular los ingresos reales del aquí recurrente, señor Jaime Santiago Román, la PIPE por él juramentada, copia de su talonario de pago de chofer del Municipio de Bayamón y las Planillas de Contribución Sobre Ingresos para los años 2022. 2023 y 2024, obraban en el expediente a la fecha de la vista final ante la EPA el 13 de mayo de 2025.

> Erró el Tribunal de Primera Instancia al imponer honorarios de abogado por 4 vistas ya que el que la demandante-recurrida no haya ido preparada a la primera vista provocó el resto de las vistas en este caso; por cuanto, su falta de preparación no debe ser adjudicable al padre no custodio sino a su falta de diligencia con antelación a la presentación de su caso.

A pesar de haberle concedido la oportunidad a la señora Batista Cintrón para que compareciera, esta no lo hizo. Por lo cual, procedemos a resolver sin el beneficio de su postura sobre los méritos del recurso.

**II. Exposición del derecho aplicable**

A.

Nuestra jurisdicción reconoce que los menores tienen un derecho fundamental a recibir alimentos que emana de la cláusula constitucional del derecho a la vida consagrado en la Carta de Derechos de la Constitución de Puerto Rico. *Díaz Rodríguez v. García Neris*, 208 DPR 706, 717 (2022); *De León Ramos v. Navarro Acevedo*, 195 DPR 157, 169 (2016). Reiteradamente, se ha expresado que la obligación de todo progenitor de proveer alimentos a sus hijos e hijas está revestida del más alto interés público. *James Soto v. Montes James*, 213 DPR 718, 729 (2024); *Díaz Rodríguez v. García Neris*, supra, pág. 718. El interés principal es el bienestar del menor. *Díaz Rodríguez v. García Neris*, supra; *Santiago, Maisonet v. Maisonet Correa,* 187 DPR 550, 559 (2012). A tenor con ello, el Artículo 590 del Código Civil de 2020, establece que las madres y los padres, por razón de la patria potestad tienen, entre otros, el deber de alimentarlo y proveerle lo necesario para su desarrollo y formación integral. 31 LPRA sec. 7242.

Por su parte, el Artículo 653 del Código Civil de 2020, 31 LPRA sec. 7531, define alimentos como todo lo indispensable para el sustento, la vivienda, vestimenta, recreación y asistencia médica, según la posición social de la familia. Ese término también comprende la educación e instrucción del alimentista, cuando este es menor de edad. *Íd.* Definiciones análogas se pueden encontrar en el Artículo 2 (7) de la Ley Orgánica de la Administración para el Sustento de Menores (Ley de ASUMe), Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, 8 LPRA sec. 501 (7) y el Artículo 6 del Reglamento 9535 del 15 de febrero de 2024, denominado *Guías Mandatorias para Fijar y Modificar Pensiones Alimentarias en Puerto Rico* (Guías Mandatorias).

Al fijar la cuantía de los alimentos del menor de edad, se debe hacer un balance entre los intereses del menor y la **capacidad económica** de los

responsables de costear sus necesidades. *Pesquera Fuentes v. Colón Molina*, supra, pág. 108. La determinación de la cuantía de los alimentos corresponde al prudente arbitrio del juzgador, quien debe velar porque la cuantía que se establezca cumpla con el principio de proporcionalidad. *Santiago, Maisonet v. Maisonet Correa*, supra, pág. 562.

B.

De otro lado, para fijar la pensión, el Artículo 16 de la Ley de ASUMe, 8 LPRA sec. 515, provee el descubrimiento compulsorio de información bajo el procedimiento judicial expedito.  En lo pertinente, este indica así:

> En los procedimientos judiciales relacionados con pensiones alimenticias, el descubrimiento sobre la situación económica del alimentante y alimentista será compulsorio.
>
> De solicitarlo cualesquiera de las partes, **la presentación de una copia certificada de la planilla de contribución sobre ingresos, así como una certificación patronal del sueldo o salario, será compulsoria**.
>
> La Oficina de Administración de los Tribunales preparará un formulario para servir de guía respecto de la información **mínima** requerida sobre la situación económica de las partes, las necesidades del alimentista y la capacidad de pago del alimentante. El formulario completado y juramentado, u otro documento similar, también juramentado, que contenga toda la información requerida deberá radicarse en la secretaría del tribunal y notificarse a la otra parte con antelación a la vista y sujetará al declarante a las penalidades dispuestas para el delito de perjurio.
>
> **La radicación del formulario no constituirá excusa respecto de la obligación de las partes de revelar todas las circunstancias que permitan determinar su particular situación económica.**
>
> **La radicación de este formulario o de otro documento similar no constituirá impedimento para el uso de los mecanismos de descubrimiento de prueba, según establecido en las Reglas de Procedimiento Civil, Ap. V del Título 32.** No obstante, la decisión de usar los mecanismos de descubrimiento de prueba no será razón para suspender la vista señalada por el secretario del tribunal, según establecido en el Artículo 15 de esta ley (8 LPRA sec. 514).  En esa vista se determinará el monto de una pensión provisional a ser recomendada al juez y se señalará nueva vista para la fecha más próxima viable.  La pensión provisional así fijada permanecerá en vigor hasta que el tribunal dicte una nueva resolución u orden.

> Cuando se utilicen los mecanismos regulares de descubrimiento de prueba, no se concederán prórrogas para cumplir con los términos establecidos por las Reglas de Procedimiento Civil, Ap. V del Título 32, excepto mediante la demostración rigurosa de justa causa.
>
> **Las sanciones provistas en las Reglas de Procedimiento Civil, Ap. V del Título 32, por negarse a descubrir o por contestar en forma evasiva las preguntas formuladas como parte del procedimiento de descubrimiento de prueba, serán aplicadas con todo el rigor, incluyendo la imposición de honorarios de abogado.** (Énfasis provisto).

Ahora bien, existe una excepción al requisito de descubrir información sobre la situación económica. Esto es, el alimentante queda exento del requisito de someter información sobre sus ingresos en la planilla de información personal y económica, **si acepta** que tiene capacidad económica para pagar la totalidad de la pensión alimentaria. *Chévere v. Levis I*, 150 DPR 525, 545 (2000), además, *Díaz Rodríguez v. García Neris*, supra, pág. 719. Por lo tanto, en esos casos solo resta determinar la suma justa y razonable que ha de ser impuesta como pensión alimentaria a base de las necesidades del alimentista. *Díaz Rodríguez v. García Neris*, supra, pág. 719.

Por otro lado, nuestro ordenamiento jurídico también reconoce ciertas instancias en las que se le imputará ingresos al alimentante. El Artículo 11 de la Ley de ASUMe, relacionado al procedimiento **administrativo** expedito, provee que se puede imputar ingresos a:

> la parte que se negare a descubrir la información dentro del término requerido o no contestare debidamente o con evasivas, el ingreso promedio del oficio, ocupación, profesión del alimentante, según toda la prueba disponible, incluyendo estimados, estudios y proyecciones de ingresos, gastos, estilo de vida y cualquier otra prueba pertinente y continuar con el procedimiento administrativo autorizado por esta Ley, incluyendo hacer una determinación en rebeldía. 8 LPRA sec. 510.

Por otro lado, el Artículo 8 (1) (a) de las Guías Mandatorias, dispone que, el juzgador le imputará ingresos a la persona alimentante cuando, entre otros, "[e]xistan indicios o señales de que el ingreso es mayor al que la persona informa".

En estos casos, para fijar una pensión el Tribunal de Instancia puede tomar en cuenta "el estilo de vida del alimentante, sus propiedades, su profesión y preparación académica, su historial de empleo y de ingresos, su experiencia laboral, su capacidad y aptitud para generar ingresos y otros factores similares para imputarle ingresos al alimentante razonablemente, más allá de lo que éste alegue o intente probar sobre el particular." *Argüello v. Argüello*, 155 DPR 62, 74 (2001).

### C.

El efectivo funcionamiento de nuestro sistema judicial, y la rápida disposición de los asuntos litigiosos, requieren que los jueces de instancia tengan gran flexibilidad y discreción para lidiar con el diario manejo y tramitación de los asuntos judiciales. *In re Collazo I*, 159 DPR 141, 150 (2003). Es por ello que a éstos se les ha reconocido poder y autoridad suficiente para conducir los asuntos litigiosos ante su consideración y para aplicar correctivos apropiados en la forma y manera que su buen juicio les indique. *Íd*. El Tribunal de Primera Instancia tiene el deber ineludible de garantizar que los procedimientos se ventilen sin demora, con miras a que se logre una justicia rápida y eficiente. *In re Pagani Padró*, 181 DPR 517, 529 (2011).

Desde la aprobación de las Reglas de Procedimiento Civil del 1943, nuestros tribunales han tenido la autoridad de imponer una serie de sanciones en contra de aquellas partes litigantes que incumplan con el descubrimiento de prueba. *HRS Erase v. CMT*, 205 DPR 689, 699 (2020). De igual forma, los tribunales están facultados para velar por el cumplimiento de sus órdenes y, con tal objetivo, pueden, por ejemplo, **imponer sanciones económicas a las partes y a los abogados que incumplan estas.** Véanse, Reglas 34.3, 37.7 y 44.2 de Procedimiento Civil, 32 LPRA Ap. V., R. 34.3, R. 37.7 y R. 44.2. Véase, además, *Pérez Torres v. Acad. Perpetuo Socorro*, 182 DPR 1016, 1026 (2011). (Énfasis provisto).

Así pues, la Regla 44.2 de Procedimiento Civil, *supra,* permite que el tribunal imponga sanciones económicas en cualquier etapa a una parte o su representante legal cuando incurra en conducta constitutiva de demora, inacción, abandono, obstrucción o falta de diligencia en perjuicio de la eficiente administración de la justicia. De igual forma, la Regla 37.7 de Procedimiento Civil, *supra,* autoriza a los tribunales a imponer la sanción económica que corresponda a aquella parte o representante legal que incumpla cualquier orden del tribunal para el manejo del caso sin que medie justa causa. El texto íntegro de la Regla 37.7, *supra*, lee como sigue:

> [s]i una parte o su abogado o abogada incumple con los términos y señalamientos de esta Regla, o incumple cualquier orden del tribunal para el manejo del caso sin que medie justa causa, el tribunal impondrá a la parte o su abogado o abogada la sanción económica que corresponda [...]

Significamos que el texto vigente de la Regla 37.7 de Procedimiento Civil, *supra*, faculta al Tribunal para imponer una sola sanción, la económica. Sobre ello, el Tribunal Supremo ha resuelto que, para evitar dilaciones innecesarias en el manejo de un caso, la Regla 37.7 de Procedimiento Civil, *supra*, provee para la imposición de sanciones económicas por el incumplimiento injustificado con las órdenes y los señalamientos del tribunal. *Rivera Gómez v. Arcos Dorado Puerto Rico, Inc.*, 212 DPR 194, 214 (2023). Sin embargo, nada impide que los tribunales impongan sanciones más severas luego de que la parte sea debidamente apercibida de la situación y de las consecuencias que acarrearía un incumplimiento subsiguiente. *Id.*

### D.

El Artículo 22(1) de la Ley de ASUMe, 8 LPRA sec. 521(1), dispone que, en cualquier procedimiento referente a la fijación de una pensión alimenticia, deberá imponerse al alimentante el pago de honorarios de abogado a favor del alimentista, cuando éste prevalezca. En lo particular, el Artículo 22 de la referida ley establece lo siguiente:

> (1)   En cualquier procedimiento bajo esta Ley para la fijación, modificación o para hacer efectiva una orden de pensión

> alimentaria, el tribunal, o el Juez Administrativo deberá imponer al alimentante el pago de honorarios de abogado a favor del alimentista cuando éste prevalezca.
> (2)    El tribunal, o el Juez Administrativo podrá imponer al alimentante el pago de honorarios de abogado a favor del alimentista al fijarse una pensión provisional.
> (3)    En el caso en que las partes estén casadas entre sí y uno de los cónyuges controle la totalidad o la mayor parte de los bienes líquidos de la sociedad de gananciales, el tribunal, o Juez Administrativo ordenará al que controla los bienes conyugales el pago inmediato de honorarios de abogado razonables al otro cónyuge, según solicitados.

Nuestro más alto foro ha resuelto que procede la imposición de los honorarios de abogado a favor de los menores en una acción para reclamar alimentos, sin la necesidad de que actúe con temeridad el demandado al defenderse de la reclamación. *Torres Rodríguez v. Carrasquillo Nieves*, 177 DPR 728, 740 (2009).

El criterio rector al conceder honorarios de abogado es compensar las dificultades que sufre el alimentista al tener que reclamar judicial o administrativamente los alimentos a quien tiene la obligación moral y legal de suministrarlos. *Torres Rodríguez v. Carrasquillo Nieves,* supra, págs. 741-742.

Por último, no procede intervenir con los honorarios de abogado concedidos por el foro primario, salvo que la suma concedida sea irrazonable, y deberá imponérsele al alimentante el pago de los honorarios bajo esta sección a favor del alimentista cuando éste prevalezca. *Becerra v. Ildefonso Mora Monteserín*, 178 DPR 1003, 1035 (2010).

### III. **Aplicación del derecho a los hechos**

A.

Los dictámenes ante nuestra consideración inciden sobre un caso de relaciones de familia, el cual es revisable en virtud de que el ordenamiento le ha concedido a este foro intermedio la discreción para atenderlo. Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1.

La controversia central a dirimir versa sobre si incidió el TPI al imputarle capacidad económica como sanción al alimentante, señor

Santiago Román, tras determinar que este incumplió con las órdenes del tribunal para que descubriera la prueba solicitada por la señora Batista Cintrón, madre de la alimentista. No obstante, con el propósito de facilitar la dilucidación del caso, discutiremos el segundo y tercer error planteado por la parte peticionaria, los cuales inciden sobre el alcance del descubrimiento de prueba ordenado por el foro primario.

En vista de ello, iniciamos por destacar que la prueba solicitada por la señora Batista Cintrón el 20 de diciembre de 2024, la cual fue objetada por el señor Santiago Román, incluyó datos personales como el número de seguro social, número de teléfono y correo electrónico, así como evidencia del pago de alquiler, facturas de servicio de energía eléctrica y agua, gastos mensuales de gasolina, estados bancarios, deudas y acreedores, ingresos recibidos por concepto de herencia, etc.[2] Entonces, una vez la señora Batista Cintrón solicitó la intervención del tribunal para dilucidar la controversia sobre las objeciones al descubrimiento, el foro primario refirió el caso a la EPA.

Por consiguiente, se celebró una vista el 3 de febrero de 2025, cuyo *Acta* establece que la EPA expresó que el descubrimiento de prueba antes mencionado estaba dirigido a auscultar los ingresos de la parte peticionaria y **que eran documentos usuales que se solicitaban en los casos de alimentos.** El 4 de abril de 2025, la EPA reiteró que la documentación solicitada en el descubrimiento de prueba cursado por la señora Batista Cintrón al señor Santiago Román **no solo era pertinente, sino compulsoria**. Por consiguiente, recomendó que el tribunal le ordenase a la parte peticionaria que contestara el descubrimiento de prueba cursado u ordenara que el padre alimentante asumiera capacidad económica de los gastos de la menor.

El 9 de abril de 2025, el TPI emitió una *Orden* mediante la cual le concedió un término para que remitiera las contestaciones y documentos

---

[2] Véase págs. 98-99 del apéndice del recurso.

del descubrimiento de prueba que le fue cursado, so pena de que se le imputara capacidad económica. Sin embargo, pasado el término para que la parte peticionaria contestara el descubrimiento, el 29 de abril de 2025 el TPI ordenó la continuación de los procedimientos dando por imputada la capacidad económica del señor Santiago Román.

De conformidad con lo anterior, **tanto la EPA como el TPI coinciden en que todo el descubrimiento solicitado por la parte recurrida es pertinente y compulsorio.** En cambio, la postura de la parte peticionaria se reduce a que cumplió con el descubrimiento de prueba que entendía *compulsorio*: la PIPE juramentada, talonarios y planillas contributivas para los años 2022-2024. No obstante, consideramos que este último propone una interpretación muy limitada y contraria al alcance amplio del descubrimiento de prueba en los casos de alimentos.

A saber, el Art. 16 de la Ley de ASUME, *supra*, hace compulsorio el descubrimiento sobre la situación económica del alimentante en casos relacionados con las pensiones alimentarias, para poder fijar la cuantía que se ha de pagar. *Ferrer v. González*, 162 DPR 172, 178 (2004). A su vez, el artículo precitado dispone que, a solicitud de cualquiera de las partes, será compulsoria la presentación de una copia certificada de la planilla de contribución sobre ingresos, así como una certificación patronal del sueldo o salario. Art. 16 de la Ley de ASUME, *supra.*

Sin embargo, el alcance del descubrimiento de prueba para determinar la capacidad económica del alimentante no se limita a ello, pues el foro primario puede tomar en cuenta *todos* los ingresos devengados por éste, hasta los que no aparezcan informados en la Planilla de Información Personal. *Rodríguez Rosado v. Zayas Martínez*, 133 DPR 406, 412 (1993). Cónsono, el foro de instancia puede tomar en cuenta prueba circunstancial pertinente al estilo de vida del alimentante, sus propiedades, su profesión y preparación académica, su historial de empleo

y de ingresos, su experiencia laboral, su capacidad y aptitud para generar ingresos y otros factores. *Argüello v. Argüello*, supra.

A su vez, consideramos que parte de la información solicitada y no descubierta hasta este momento es requerida por el formulario de la OAT-435. Por consiguiente, juzgamos que el descubrimiento de prueba solicitado por la señora Batista Cintrón era razonable, y que la parte peticionaria no nos persuadió de que el foro primario haya actuado con pasión, perjuicio o parcialidad. Lo anterior hace forzosa la conclusión de que el segundo error señalado no fue cometido.

De otro lado, la parte peticionaria arguye que el TPI erró al no detallar en su *Orden* cuáles documentos debía producir para darse por completado el descubrimiento de prueba. Sin embargo, como se ha visto, el tracto procesal revela que la recomendación de la EPA era que se descubriera todo lo solicitado por la señora Batista Cintrón el 20 de diciembre de 2024 al entender que, de ordinario, era el tipo de información que se solicitaba en ese tipo de casos. El TPI acogió la recomendación y ordenó que se descubriera todo. En palabras del foro primario "se le concede al Sr. Jaime J. Santiago Román el término final de 15 días para que remita las contestaciones y/o documentos del descubrimiento de prueba que le fue cursado, so pena de que se le impute capacidad económica". Esto constituye una notificación razonable de la información requerida para determinar la capacidad económica de la parte peticionaria, tanto así que el tracto revela sin mayor dificultad que ha sido objetada en varias ocasiones.[3] Por lo tanto, el tercer error tampoco fue cometido y la alegada falta de claridad de la *Orden* del tribunal no debe ser usada como subterfugio para incumplir con esta.

---

[3] Véase, por ejemplo, págs. 121-130.

B.

Entonces, atendiendo el primer señalamiento de error, iniciamos enfatizando que las determinaciones del foro de instancia sobre el manejo de los casos ante su consideración están basadas en el ejercicio de la sana discreción del juez que allí presida. Ello implica que el juez de instancia tendrá el poder y la autoridad suficiente para conducir los asuntos que examina de la forma y manera que su buen juicio les indique. *In re Collazo I,* supra. Así que, como foro revisor, en ausencia de abuso de discreción o que el juez se haya equivocado en la aplicación del derecho, debemos otorgarles deferencia a las determinaciones del foro de instancia.

Como corolario de lo anterior, reconocemos que el foro de instancia tiene facultad para imponer sanciones con el propósito de asegurar que las partes cumplan con sus deberes procesales. En el caso particular de que se estuviese ante un procedimiento administrativo sobre pensión alimentaria, el Art. 11 de la Ley de ASUME provee expresamente, que se le impute el *ingreso promedio del oficio* del alimentante, cuando este se niegue a descubrir la información que le sea requerida. Sin embargo, en el procedimiento judicial, la ley redirige a las Reglas de Procedimiento Civil, *supra*, cuando resulte necesario sancionar a una parte por incumplimiento con una orden del Tribunal.

A esos efectos, la Regla 37.7 de Procedimiento Civil, *supra.* regula la imposición de sanciones económicas por incumplir con las órdenes y los señalamientos relacionados al manejo del caso, sin que medie justa causa. *Rivera Gómez v. Arcos Dorado Puerto Rico, Inc.*, supra. Dicha Regla establece que *[s]i una parte o su abogado o abogada incumple con los términos y señalamientos de esta regla [R. 37], o incumple cualquier orden del tribunal para el manejo del caso sin que medie justa causa, el tribunal **impondrá a la parte o a su abogado la sanción económica que corresponda**. Regla 37.7 de Procedimiento Civil, supra.* (Énfasis provisto).

Cónsono con ello, el Tribunal Supremo ha resuelto que, aunque nada impide que, luego de apercibir a la parte sobre las consecuencias de su incumplimiento, el tribunal pueda imponer sanciones más drásticas, su discreción se limita a *considerar si las razones que brinda la parte o el abogado que incumplió son suficientes para justificar la no imposición de la sanción económica. Rivera Gómez v. Arcos Dorado Puerto Rico, Inc.*, supra, citando a R. Hernández Colón, *Práctica jurídica de Puerto Rico: Derecho Procesal Civil,* 6ta ed., San Juan, Ed. LexisNexis, 2017, pág. 387. **Así pues, el curso a seguir ante un primer incumplimiento con respecto el manejo del caso, es la imposición de una sanción económica. En la eventualidad de que ocurra un segundo incumplimiento, entonces, puede el foro primario imponer sanciones más severas**.

Cabe en este punto resaltar que, sobre las consecuencias de la imputación de capacidad económica al alimentante como sanción, se encuentra el que quede privado de impugnar la pensión bajo el argumento de que no cuenta con los recursos necesarios para ello. *De León Ramos v. Navarro Acevedo,* supra, pág. 174. También, vendría obligado a cubrir el 100% de la pensión a ser adjudicada, haciéndose imposible activar el mecanismo delineado en las *Guías Mandatorias* para adjudicar porcientos de responsabilidad entre los progenitores. *De León Ramos v. Navarro Acevedo*, supra, pág. 175.

Entonces, examinado el expediente ante nuestra consideración, lo cierto es que no surge que el señor Santiago Román hubiese aceptado voluntariamente la imputación de capacidad económica, sino que se le impuso por el Tribunal como sanción por incumplir con las órdenes sobre descubrimiento de prueba. Por tanto, al ser la imputación de capacidad económica una sanción severa, **debió precederle la sanción económica que el foro recurrido estimara razonable para asegurarse del cumplimiento de sus órdenes**. Es decir, juzgamos que el foro primario

abusó de su discreción al imputarle capacidad económica al alimentante como primer mecanismo sancionador, ante la negativa de este a descubrir la prueba que le fue requerida, debió agotar otros remedios sancionadores menos severos antes. En definitiva, juzgamos que este primer señalamiento de error fue cometido.

Dicho lo anterior, valga aclarar que en modo alguno debe interpretarse lo explicado como que estamos avalando los evidentes incumplimientos del señor Santiago Román con las órdenes para descubrir la prueba que emitió el TPI. Al contrario, afirmamos que el Tribunal sigue estando en posición de imponer las sanciones económicas que estime, pero de acuerdo con lo aquí dispuesto.

C.

Por último, a través del cuarto error, la parte peticionaria impugna la imposición de honorarios de abogado por cuatro vistas realizadas, pues le adjudica a la parte recurrida el no haber ido preparada a la primera vista y que ello provocó que se tuviesen que celebrar el resto de las vistas. No nos convence.

Según adelantamos, nuestro estado de derecho le impone al alimentante el pago de honorarios de abogados, *porque la negación de esos fondos en un pleito por alimentos privaría al alimentista, o a su representante o guardián, de los recursos económicos necesarios para reclamar y hacer efectivo su derecho. Incluso, podría comprometer la pensión alimenticia para atender el reclamo de pago del representante legal. Torres Rodríguez v. Carrasquillo Nieves,* supra, pág. 741. Por consiguiente, quedamos habilitados para intervenir con la determinación judicial solo si los honorarios impuestos fueron irrazonables, y en este caso no hay asomo de irrazonabilidad en la determinación sobre los honorarios impuestos.

**IV. Parte dispositiva**

Por los fundamentos esbozados, que se hacen formar parte de nuestro dictamen, se expide el recurso de *certiorari* solicitado y se *Revocan* las *Resoluciones* recurridas, de acuerdo con lo aquí explicado. En consecuencia, se devuelve el caso al Tribunal de Primera Instancia para que actúe conforme a lo decidido.

Lo acordó el Tribunal y lo certifica su Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones